Curia per
Johnsoh, J.
There are only two general propositions growing out of the grounclsjof this motion.
*548 1st. Whether an action on the case lies against a Master in Chancery for neglecting to take sufficient security to a Guardianship Bond.
2nd. Whether the proofs in this case were sufficient to entitle the plaintiff to a verdict.
As to the first, the authorities referred to in a former opinion pronounced by this Court between these parties (a) maintain fully, that in general an action on the' ease will lie against a ministerial officer for a neglect of duty by which another is injured. The neglect of the sheriff to take sufficient bail, may be given as an illustration, for which all the books agree he is liable in an action on the case. Bull. N. P. 60; 1 Bay, 328. The analogy between the duties required of a sheriff in relation to a bail bond, and of the Master in relation to a guardianship bond are so striking that J am utterly unable to discover any foundation for. a distinction between them, either in respect to their nature, or the extent or manner of their liability. The same reasons which would apply in one case, it appears tc me equally apply to the other. The objects to be attained are substantially the same, and the same degree of diligence and circumspection in taking the security ard necessary to both, and I am utterly unable to discover why the same remedy for the neglect of such duty, is not equally applicable to both. It is said that the plaintiff’s reí iedy is by action of debt on the bond entered into by the defendant, to the State, for the faithful discharge of the duties of the office of Master in Chancery, but in thisjrospect also it corresponds with the case of a sheriff — he too gives bond and security for the faithful discharge Of the duties of his office, and if that remedy may be waived in one case, it would seem that it might in the othei.
*549 Again : In tbe absence of any bond according to the principle before laid down, case would be the only remedy. The penalty of these bonds are in point of fact and necessarily so limited in amount. And if we suppose a case, which not unfrequently happens, that the recoveries on the bond are equal to the amount of the penalty, then according to the doctrine contended for, the plaintiff would be without a remedy, however able the defendant might be to indemnify him for the wrong.
That the plaintiff might have sued the bond is not questioned, but‘the right to two remedies for the same wrong, is not an anomaly. In many cases,' debt and assumpsit both lie on the same contract. So, of trespass and case, and trover and detinue, and if the party has made his election, there is no reason for turning him aboüt to recommence his suit.
In discussing the second proposition it will be conceded that the plaintiff has established by competent and sufficient testimony that the security taken by the defendant was insufficient and that the defendant was guilty of gross negligence in not ascertaining the state of the credit of the security at the time he took the bond. But that is not enough : He was boiind also to show that he had been injured, and the extent of the loss he had sustained.
The proof offered to establish-these facts, was that T. S. Rhodes, the guardian, Was in possession of a negro woman, to which his wards, the plaintiff and Elizabeth Rhodes, were said to be entitled, and that he told the witness .he had sold her for $700, and that,it was contended was sufficient to throw on the defendant the burthen of accounting for this sum.- Every one who understands the nature of the office of guardian must know that receipts and disbursements are necessarily incident to it, and until these arc ascertained any estimate of the funds in the hands of the guardian must be conjectural, and at- *550 though the damages in this form of action are in some degree arbitrary if the plaintiff seeks to be redressed for a particular injury, the extent of which can be ascertained with certainty, he is bound to prove it.
• It is contended, however, that Rhodes, the guardian, was a competent witness to pfove in what manner he had applied the fund, and a presuihption having arisen from the facts proved against the defendant, he might have called him as a witness to shqw it.
Rhodes was equally a competent witness for the plaintiff, and might have been called by him, and until the plaintiff had made out a case which entitled him to a verdict, the defendant was not hound to prove anything. But again — The extent of the injury sustained by the plaintiff, could only be ascertained, by an account of Rhodes’ guardianship, and if he bad been called by the defendant, and asked as to the state of his accounts, he might have answered, and perhaps truly, that he was ignorant as to their real situation, and the Court of Law has no power to compel him to enter into an account; and besides that, every item of that account would have been a distinct issue between the plaintiff and Rhodes, which the proceedings in this case did not put in issue, and which from the organization of the Court, it was incompetent to try.
Let us put this question in another point of view.— The measure of the defendants liability is limited by the amount wasted by the guardian ; and although this is an action in form ex delicto in which the damages are in some degree arbitrary, an injury must be proved to entitle the plaintiff to a verdict. The guardian, by the terms of his bond, and the nature of his office, was bound to account in the Court of Chancery, and the plaintiff had it in his power to compel that account at any time he pleas-ed, and by this means could have ascertained with pro- *551 cisión tlie exact extent of the injury ; and that being the best and highest evidence in his power, he was bound to have produced it, It may bo said that this evidence was equally in the power of the defendant, and that he was bound to produce it. I answer no. The defendant had ceased to be master of the Court, and ho could not ex officio have called the guardian to account; and the want of interest in the subject matter, would have been an answer to any application for an account at his instance. It follows, therefore, that the evidence offered by the plaintiff was incompetent, as better was in his power.
The liability of the defendant, if he be liable, grows out of the defalcation of the guardian, and 1 apprehend that to charge him the same proof is required as if the action had been against the guardian, and I need scarcely add, that the only means of getting at it, is through an account in the Court of Chancery. The case of Anderson vs. Maddox, 3 M’Cord, 287, and several others which have been decided on the same principle establish that the surety to an administration or guardianship bond is not liable until the defalcation of the principal is ascertained by an account, because it is impossible by any other means to ascertain the extent of the liability, and the same principle equally applies to the case under consideration.— The object of this action is to charge the defendant with the defalcation of the guardian, because he neglected to take sufficient security, and without an account it is equally impossible to ascertain the extent.
I was disposed on the first view to think that the motion for a nonsuit ought to prevail, but the circumstances create a very strong presumption that the plaintiff has merits, and that the ncceasary proof may yet bo obtained \ new trial is therefore ordered.
Vw triol gronfftrft

.) Vide ante, 33.